UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHAHRAM K. RABBANI,                               :
                                                  :
                        Plaintiff,                :      Case No. 10-CV-0170 (DLC) (AJP)
                                                  :
        -against-                                 :      **AMENDED COMPLAINT**
                                                  :
ENZO BIOCHEM, INC., DR. ELAZAR RABBANI,           :
BARRY W. WEINER, STEPHEN B.H. KENT, IRWIN         :
C. GERSON, BERNARD L. KASTEN, and MELVIN          :
F. LAZAR,                                         :
                                                  :
                        Defendants.               :
                                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Shahram K. Rabbani ("Mr. Rabbani" or "Plaintiff"), as and for his Complaint

against Defendants Enzo Biochem, Inc. ("Enzo" or the "Company"), Dr. Elazar Rabbani ("Dr.

Rabbani"), Barry W. Weiner ("Weiner"), Stephen B.H. Kent ("Kent"), Irwin C. Gerson

("Gerson"), Bernard L. Kasten ("Kasten"), and Melvin F. Lazar ("Lazar") (the "Individual

Defendants") (together with Enzo, the "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.      This action for declaratory and injunctive relief arises out of the improper attempt

by the Individual Defendants to entrench themselves in their lucrative management positions and

disenfranchise Plaintiff and other shareholders of their right to effect change at the Company.

On November 20, 2009, Mr. Rabbani -- a current director and shareholder of the Company who

co-founded the Company with his brother, Dr. Rabbani, over 33 years ago -- notified the

Company in writing of his nomination of independent candidates for election as directors at the

Company's next meeting of stockholders, which the Company recently scheduled for January 29,

2010.  Rather than recognize Mr. Rabbani's slate of directors, as the Defendants were required to

do under the Company's By-Laws and New York State law, the Company notified Mr. Rabbani

that his Nomination Letter somehow "fail[ed] to comply with the requirements of the Company's

Amended and Restated By-Laws" -- without providing any details or specific reasons for that

claim.  Only after several written exchanges between the parties -- during which the Company

repeated its position that Mr. Rabbani's Nomination Letter was supposedly "deficient" and of no

legal effect -- did the Company finally provide, on December 23, 2009, an itemized list of the

supposed "reasons" for rejecting Mr. Rabbani's Nomination Letter.  All of the purported reasons

provided by the Company are false, baseless, inadequate and/or pretextual.

2.      For example, the Company asserted that the Nomination Letter was deficient

because, among other things, the letter "fails to disclose clearly whether any of the Nominees has

been subject to the reporting obligations under Section 16(a) of the Exchange Act at any time

during the Company's fiscal year...."  To the contrary, the Nomination Letter stated that each

nominee "has not been, and is not currently...subject to the reporting obligations under Section

16(a) of the Exchange Act with respect to any securities of the Company," in other words, that

none of the nominees has ever been subject to Section 16(a) with respect to the Company.

3.      The rejection of the Nomination Letter is just one action by the Defendants

designed to disenfranchise Mr. Rabbani and Enzo's other shareholders.  For example, in the

proxy statement filed by the Company on December 23, 2009, the Defendants accelerated the

date of the shareholders' meeting to January 29, 2010 without providing any advance notice to

Mr. Rabbani that they were doing so.  Indeed, this date came as a surprise to Mr. Rabbani, who

had been informed by the Defendants in writing a month earlier, on November 23, 2009, that the

shareholders' meeting was to be scheduled for February 9, 2010.  Two days later, however, at the

November 25, 2009 Enzo board meeting, the Board did not fix the date of the shareholders'

meeting to February 9, 2010 (as set forth in the November 25 Board Agenda) or to any other date. Rather, the date of the shareholders' meeting was postponed without setting a definitive date. It is believed that the Defendants accelerated the date of the shareholders' meeting to January 29, 2010 in order to squeeze Mr. Rabbani and limit his time to prepare for a proxy contest that the Defendants are attempting to terminate through their unlawful and manipulative means described herein.

## PARTIES

4.      Mr. Rabbani, an individual residing at 17 Catalina Drive, Kings Point, NY 11024, is currently a member of the Board of Directors of Enzo and a significant shareholder, owning approximately 3.8% of the outstanding shares. Until November 25, 2009, Mr. Rabbani served as the Secretary and Treasurer of the Company and, until March 5, 2009, served as the President of Enzo Clinical Labs, Inc. ("Enzo Labs"), Enzo's largest subsidiary. In 1976, Mr. Rabbani co-founded Enzo with his brother, Dr. Rabbani, and also served for many years as Enzo's Chief Operating Officer and Chief Financial Officer.

5.      Upon information and belief, Defendant Enzo -- a publicly traded company -- is a corporation organized under the laws of the State of New York with its principal place of business located at 527 Madison Avenue, New York, New York 10022.

6.      Defendant Dr. Rabbani is a natural person who, upon information and belief, resides at 69 Fifth Avenue, Apt. 19A, New York, New York 10003. At all times relevant hereto, Dr. Rabbani served as the CEO and Chairman of the Board of Enzo. Dr. Rabbani is Mr. Rabbani's older brother.

7.      Defendant Weiner is a natural person who, upon information and belief, resides at 69 Fifth Avenue, Apt. 15D, New York, New York 10003. At all times relevant hereto, Weiner

served as the CFO and President of Enzo and a member of the Board of Directors of Enzo. Mr. Weiner is Dr. Rabbani's and Mr. Rabbani's brother-in-law.

8.  Defendant Kent is a natural person who, upon information and belief, resides at 273 Hartford Street, San Francisco, California 94114. At all times relevant hereto, Kent served as a member of the Board of Directors of Enzo.

9.  Defendant Gerson is a natural person who, upon information and belief, resides at 189 Spyglass Lane, Jupiter, Florida 33477. At all times relevant hereto, Gerson served as a member of the Board of Directors of Enzo.

10.  Defendant Kasten is a natural person who, upon information and belief, resides at 8622 Twilight Tear Lane, Cincinnati, Ohio 45249. At all times relevant hereto, Kasten served as a member of the Board of Directors of Enzo.

11.  Defendant Lazar is a natural person who, upon information and belief, resides at 400 E. 56th St., Apt. 16N, New York, New York 10022. At all times relevant hereto, Lazar served as a member of the Board of Directors of Enzo.

## JURISDICTION AND VENUE

12.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

13.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendants reside or do business within this District and a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### The Company

14.    In or about 1976, Dr. Rabbani and Mr. Rabbani co-founded Enzo, a publicly-traded life sciences and biotechnology company focused on harnessing genetic processes to develop research tools, diagnostics, and therapeutics.

15.    Mr. Rabbani is currently a member of the Board of Directors of Enzo and a significant shareholder, owning approximately 3.8% of the outstanding shares.  Until November 25, 2009, Mr. Rabbani served as the Secretary and Treasurer of the Company and, until March 5, 2009, served as the President of Enzo Labs, Enzo's largest subsidiary.

### The Company's Amended and Restated By-Laws
### Set Forth the Process for Nominating Director Candidates

16.    Section 15 of Article II of the Company's Amended and Restated By-Laws (the "By-Laws") sets forth the process for nominating director candidates of the Company, providing as follows:

> Shareholder Nomination of Director Candidates. Notification of Nomination. Subject to the rights of holders of any class or series of stock having a preference over another class or series of stock as to dividends or upon liquidation to elect additional directors under specified circumstances, nominations for the election of directors may be made by the Board or a proxy committee appointed by the Board or by any shareholder entitled to vote in the election of directors generally. However, any shareholder entitled to vote in the election of directors generally may nominate one or more persons for election as directors at a meeting only if written notice of such shareholder's intent to make such nomination or nominations has been given, either by personal delivery or by United States mail, postage prepaid, to the Secretary of the Corporation not later than (i) with respect to an election to be held at an annual meeting of shareholders, 60 days in advance of such meeting, and (ii) with respect to an election to be held at a special meeting of shareholders for the election of directors, the close of business on the seventh day following the date on which notice of such meeting is first given to shareholders. Each such notice shall

set forth: (a) the name and address of the shareholder who intends to make the nomination and the person or persons to be nominated; (b) a representation that the shareholder is a holder of record of stock of the Corporation entitled to vote at such meeting and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (c) a description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder; (d) such other information regarding each nominee proposed by such shareholder as would be required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission, had the nominee been nominated, or intended to be nominated, by the Board; and (e) the consent of each nominee to serve as a director of the Corporation if so elected. The chairman of the meeting may refuse to acknowledge the nomination of any person not made in compliance with the foregoing procedure.

By-Laws, Art. II, § 15 (emphasis added).

## Although Mr. Rabbani Properly Nominated Director Candidates in Compliance With the By-Laws, the Defendants Refuse to Acknowledge Mr. Rabbani's Slate

17.    On November 20, 2009, pursuant to the procedures set forth in the By-Laws, Mr. Rabbani notified the Company in writing of his nomination of independent candidates for election as directors at the Company's next meeting of stockholders.

18.    On November 25, 2009, Dr. Rabbani -- signing as the Chairman of the Board of Directors, Secretary, and Chief Executive Officer of the Company -- sent a letter to Mr. Rabbani in response to Mr. Rabbani's Nomination Letter. In his November 25 letter, Dr. Rabbani asserted, among other things, that the Nomination Letter "fails to comply with the requirements of Section 15 of Article II of the Company's Amended and Restated By-laws currently in effect." No details of the alleged failure were provided.[1]

---

[1] The letter also indicated that the Board voted to remove Mr. Rabbani as the Secretary and Treasurer of the Company.

19.     Thereafter, on December 1, 2009, Dr. Rabbani sent another letter to Mr. Rabbani which, among other things, repeated the general and unsupported assertion that the Nomination Letter "fails to comply with the requirements of Section 15 of Article II of the Company's Amended and Restated By-Laws." Again, no details of the alleged failure were provided.

20.     On December 9, 2009, Mr. Rabbani, through counsel, responded to the Company's letters dated November 25 and December 1 stating, among other things, that the form and content of the Nomination Letter fully comply with the requirements of Article II, Section 15 of the current By-Laws of the Company and includes all disclosure of the information that would be required pursuant to state and federal securities laws.

21.     In addition, Mr. Rabbani demanded, among other things, that the Company confirm in writing that Mr. Rabbani's independent nominees for election to the Board of Directors have been duly nominated in accordance with applicable statutory, regulatory, and By-Law provisions and will appear on the ballot at the next meeting of stockholders of the Company at which directors shall be elected.

22.     On December 14, 2009, the Defendants, through counsel, renewed their general and unsupported assertions that Mr. Rabbani's nomination of director candidates fails to comply with the requirements of Section 15 of Article II of the By-Laws.

23.     On December 21, 2009, Mr. Rabbani, through counsel, responded to the December 14, 2009 letter sent by Enzo's counsel. In his response, Mr. Rabbani again complained that the Company's claim that the Nomination Letter failed to comply with the By-Laws had no basis in law or fact.

**The "Reasons" Finally Offered by the Company for Refusing to Acknowledge**
**Mr. Rabbani's Director Candidates are False, Baseless, Inadequate and/or Pretextual**

24.    On December 23, the day before Christmas eve, the Company provided, for the very first time, the purported "reasons" for its claim that the Nomination Letter failed to comply with the By-Laws (the "December 23 Letter"). Not a single reason offered by the Company had merit.

25.    For example, in the December 23 Letter, the Company asserted that the Nomination Letter "fails to disclose whether an associate of any of the director nominees named in the [Nomination] Letter (the 'Nominees') is a party adverse to the Company or to any of its subsidiaries in a material proceeding or whether such associate has a material interest adverse to the Company or to any of its subsidiaries in a material proceeding, as required by Instruction 4 to Item 103 of Regulation S-K."

26.    This "reason" is baseless. The Nomination Letter unequivocally states that each nominee "has not been, and is not currently…involved in any legal proceedings within the last five years, including any such legal proceeding subject to disclosure under Items 103 or 401(f) of Regulation S-K." The plain meaning of this language covers both direct interests as well as the indirect interests cited in the December 26 Letter. Moreover, given that no facts or circumstances exist that required disclosure under Item 103 of Regulation S-K and that a statement to that effect is not required in a proxy statement, no such statement was required in a nomination under the Company's By-Laws.

27.    The Company further asserted that the Nomination Letter "fails to disclose whether or not there is a family relationship between a Nominee and a director or officer of the Company or person nominated by the Company to become a director or executive officer, as required by Item 401(d) of Reg. S-K."

8

28.    This "reason" is also baseless.  Given that no facts or circumstances exist that required disclosure under Item 401(d) of Regulation S-K and that a statement to that effect is not required in a proxy statement, no such statement was required in a nomination under the Company's By-Laws.  In addition, the Nomination Letter states that each nominee is an "independent director" as such term is defined in Section 303A.02 of the NYSE Listed Company Manual, a statement that could not have been made if such a family or other relationship existed but was not disclosed to and vetted by the board of directors.

29.    The Company further asserted that the Nomination Letter "fails to describe clearly Andre de Bruin's principal occupation and employment during the past five years (e.g., Mr. de Bruin's biography states that he is the founder and CEO of DuraPorts Inc., but does not describe when he held such positions, so it is not clear if his activities at DuraPorts Inc. were his principal occupation and employment during the past five years), as required by Item 401(e)(1) of Reg. S-K."

30.    This "reason" is also baseless.  The sentence describing Mr. de Bruin's service as chief executive officer of DuraPorts Inc. is in the present tense.  The plain meaning of this language is that he is currently serving in this capacity and it is clearly among his current principal occupations and employments.

31.    The Company further asserted that the Nomination Letter "fails to disclose whether an immediate family member of any of the Nominees had or will have a direct or indirect material interest in a transaction, since the beginning of the Company's last fiscal year, or any currently proposed transaction, in which the Company was or is to be a participant and the amount involved exceeds $120,000, as required by Item 404(a) of Reg. S-K."

32.     This "reason" is also baseless.  The Nomination Letter states that each nominee "has not been, and is not currently…involved in any transaction with the Company in which he had a direct or indirect material interest…"  Any transactions by a member of a nominee's immediate family are subsumed by the phrase "indirect material interests" contained in the Nomination Letter.  Further, given that no facts or circumstances exist that required disclosure under Item 404(a) of Regulation S-K and that a statement to that effect is not required in a proxy statement, no such statement was required in a nomination under the Company's By-laws.

33.     The Company also asserted that the Nomination Letter "fails to disclose clearly whether any of the Nominees has been subject to the reporting obligations under Section 16(a) of the Exchange Act at any time during the Company's fiscal year (i.e., the [Nomination] Letter fails to include the fiscal year time frame in its discussion of the Nominees' reporting obligations under Section 16(a) of the Exchange Act), as required by Item 405(a)(1) of Reg. S-K."

34.     This "reason" is also baseless.  The Nomination Letter states without qualification that each nominee "has not been, and is not currently…subject to the reporting obligations under Section 16(a) of the [Exchange Act] with respect to any securities of the Company."  The plain meaning of this statement is that none of the nominees has ever been subject to Section 16(a) with respect to the Company, which period of time includes the most recently completed fiscal year.

35.     The Company also asserted that the Nomination Letter "fails to disclose whether any Nominees' election to the Company's board would create a compensation committee interlock or other insider relationship as described in Item 407(e)(4) of Reg. S-K."

36.     This "reason" is also baseless.  Given that no facts or circumstances exist that required disclosure under Item 407(e)(4) of Regulation S-K and that a statement to that effect is

not required in a proxy statement, no such statement was required in a nomination under the By-Laws.

37.    The Company also asserted that the Nomination Letter "fails to disclose whether an associate of any of the Nominees has received the types of compensation discussed in Item 402 of Reg. S-K, as required by Item 8 of Schedule 14A."

38.    This "reason" is also baseless. The Nomination Letter states that each nominee "has not been, and is not currently…the recipient of any compensation from the Company, nor is he a party to any contract, arrangement or understanding, in either case that is subject to disclosure pursuant to Item 402 of Regulation S-K." Further, given that no facts or circumstances exist that required disclosure under Item 402 of Regulation S-K and that a statement to that effect is not required in a proxy statement, no such statement was required in a nomination under the By-Laws.

39.    The Company also asserted that the Nomination Letter "fails to disclose the following (all of which are required by Item 5(b) of Schedule 14A): (a) whether a Nominee owns securities of the Company of record, but not beneficially; (b) whether a Nominee or his associates beneficially own any amount of securities of the Company; (c) whether an associate of any of the Nominees has understandings with respect to future employment with the Company; (d) whether a Nominee has borrowed any funds for the purpose of acquiring or holding securities of the Company (other than margin borrowings for that purpose); (e) whether a Nominee is, or has been within the last year, a party to any transaction involving the Company's securities; and (f) whether a Nominee has been convicted within the past 10 years of a criminal proceeding (other than traffic violation or other similar misdemeanors)."

40.    This "reason" is also baseless.  Article II, Section 15 of the By-Laws requires information to be provided by a nominating stockholder as if the nominee had "been nominated, or intended to be nominated, by the Board."  The information that the Company identified in paragraphs (a) through (f) of item 8 of its letter is only required under Item 5.b. of Schedule 14A in connection with a solicitation that is subject to Rule 14a-12(c), which is not applicable in circumstances where a nominee is nominated by the Board.  Therefore, the disclosure the Company identified was not required.

41.    The Company also asserted that the Nomination Letter "fails to disclose either of the following (each of which is required by Item 6 of Schedule 14A): (a) whether a Nominee is aware of any arrangement which may result in a change in control of the Company; and (b) whether a Nominee is aware of any arrangement under which 5% or more of the Company's securities are subject to a voting agreement."

42.    This "reason" is also baseless.  Mr. Rabbani was not aware of any arrangements that are required to be disclosed under Item 6 of Schedule 14A, and a statement to that effect is not required in a proxy statement and therefore is not required in a nomination under the Company's By-Laws.

43.    The Company also asserted that the Nomination Letter "does not include Mr. Rabbani's address as required by subsection(a) of Article II Section 15 of the Company's By-Laws."

44.    This "reason" is also baseless.  As a director and officer of the Company at the time of the Nomination Letter, the Company had actual knowledge of Mr. Rabbani's address.  Further, because Mr. Rabbani was acting Secretary of the Company at the time of the

Nomination Letter, the By-Laws only required that he deliver the Nomination Letter to himself and, as Secretary, he clearly had actual knowledge of his own address.

45.     The Company also asserted that "[t]he amount of shares of the Company's common stock held by Rabbani according to the [Nomination] Letter is different than in the draft proxy statement and does not match the Form 4 he filed on July 6, 2009."

46.     This "reason" is also baseless. The Nomination Letter identifies the number of shares of the Company's common stock of which Mr. Rabbani is the record owner. In addition, among other things, Article II, Section 15 of the Company's By-Laws only requires that Mr. Rabbani establish that he is a stockholder of record entitled to vote at the meeting of stockholders in question, a fact that he has clearly established and which the Company has already conceded in its definitive proxy statement filed on December 23, 2009.

47.     On December 28, 2009, Mr. Rabbani, through counsel, responded to Enzo's December 23, 2009 letter, setting forth the foregoing responses (among others). In his response, Mr. Rabbani thus demonstrated that the Nomination Letter clearly and unequivocally complied in all material respects with Article II, Section 15 of the Company's By-Laws.

**The Defendants Improperly Fixed the Date of the**
**Shareholders' Meeting and the Record Date for the Shareholders' Meeting**

48.     On October 14, 2009, the Company filed its annual report on Form 10-K (the "Form 10-K") with the U.S. Securities and Exchange Commission (the "Commission"). The Form 10-K disclosed, among other things, that the shareholders' meeting was "to be held on or about January 26, 2010."

49.     Shortly thereafter, on October 21, 2009, the Company, through David Goldberg, its Vice President of Corporate Development, notified all of the members of the Board of

Directors of the Company that "[w]e have scheduled the next Annual Shareholders Meeting for Tuesday, January 19th at 9 am at the Yale Club."

50.    As stated, on November 20, 2009, pursuant to the procedures set forth in the Company's By-Laws, Mr. Rabbani notified the Company in writing of his nomination of independent candidates for election as directors at the next shareholders' meeting.

51.    Three days later, on November 23, 2009, the Company, through counsel, transmitted by e-mail to Mr. Rabbani and the other Enzo board members notice and an agenda (the "November 25 Board Agenda") for a telephonic meeting of the Board of Directors of the Company to be held on November 25, 2009.  The November 25 Board Agenda set forth, among other items to be acted upon by the Board of Directors, the following dates with respect to the shareholders' next meeting:

> "Notice of Annual Meeting information
>
> - Record Date – December 14, 2009
> - Meeting Date – February 9, 2010"

52.    During the November 25, 2009 meeting of the Company's board of directors, however, the Board did not fix the date of the shareholders' meeting at February 9, 2010 (as set forth in the November 25 Board Agenda) or at any other date, nor did the Board fix the date on which stockholders of record would be entitled to vote at the shareholders' meeting.  Rather, the determination of the dates of the shareholders' meeting and the record date was postponed and definitive dates were not fixed by the Board.

53.    Under the Company's By-Laws, the annual shareholders' meeting is scheduled to occur "during the sixth month" following the close of the Company's July 31 fiscal year, that is, in January.  By-Laws, Art. I § 1.  Also under the Company's By-Laws, if the annual shareholders' meeting does not occur during a day scheduled in January, the meeting for the

14

election of directors becomes a "special meeting" to be held within two months of the day of the scheduled meeting in January.

54.    In light of the November 25 Board Agenda, the board of directors' failure to fix a date of the shareholders' meeting and record date during the November 25 board meeting, and Enzo's notice to Broadridge Financial Solutions, Inc., pursuant to Rule 14a-13, of a meeting date of February 23, 2010 for the shareholders' meeting and a record date of December 29, 2009, Mr. Rabbani reasonably believed that the upcoming shareholders' meeting would not occur in January 2010 and would thus be a "special meeting" under the By-Laws whenever it was rescheduled.  Under the By-Laws, a shareholder has the right to nominate a slate of directors "with respect to an election to be held at a special meeting of shareholders for the election of directors, [by] the close of business on the seventh day following the date on which notice of such meeting is first given to shareholders."  By-Laws, Art. II § 15.  Accordingly, in light of the foregoing, Mr. Rabbani also reasonably believed that he had the right to adjust the nomination of his slate of directors up to and including the close of business on the seventh day after he received notice of the date of the special meeting.

55.    Recently, however, on December 23, 2009, the Company filed a definitive proxy statement on Schedule 14A (the "Proxy Statement") stating, among other things, that the date of the shareholders' meeting had been fixed at January 29, 2010 with a record date of December 29, 2009.  Mr. Rabbani never received advanced notice of the fixing of this date for the shareholders' meeting or of the record date.  By letter dated December 28, 2009, Mr. Rabbani's counsel complained to the Company's counsel regarding this lack of notice and the impropriety of the Company's scheduling the shareholders' meeting for January 29, 2010 without providing him (as a sitting director of the Company) with an opportunity to be heard.

56.    On December 30, 2009, the Company, through counsel, responded to Mr.

Rabbani's December 28, 2009 letter.  Among other things, the Company claimed that, during the

November 25, 2009 board meeting,

> [i]t was formally resolved, with Mr. Rabbani expressly voicing for
> the record his abstention, that, pursuant to authority conferred by
> Article III, Section 1 of the Company's By-Laws, the Stockholder
> Meeting Committee of the Board be established and constituted
> with plenary authority to, among other things, "manage, oversee,
> administer and work with the Company's management and outside
> professional advisors with respect to planning, strategizing,
> soliciting votes and convening the Company's 2009 Annual
> Meeting or, to the extent such meeting is not held on or before
> January 31, 2009, any subsequent special meeting of the
> Company's stockholders at which Company directors are to be
> elected....

57.    The foregoing assertion is consistent with Mr. Rabbani's recollection that no date

was fixed for the shareholders' meeting during the Board meeting on November 25, 2009.

58.    The Company further claimed in the December 30, 2009 letter that

> Pursuant to the authority vested in the Stockholder Meeting
> Committee, that Committee determined the date on which the
> Annual Meeting of the Company would be held and established the
> record date for the determination of shareholders entitled to notice
> of and to vote at the Meeting.  Thus, as your client well knows, the
> date of the Annual Meeting and the record date were properly and
> lawfully established (and, accordingly, the NYSE was properly
> notified), and any assertions to the contrary are ludicrous.

59.    The Company's assertion that Mr. Rabbani knew that "the date of the Annual

Meeting and the Record Date were properly and lawfully established" is untrue.  Indeed,

contrary to the Company's assertion, the creation of the so-called "Stockholder Meeting

Committee" violated New York law.  Specifically, section 712(a) of the New York Business

Corporation law, which governs a corporate board's ability to establish and delegate authority to

committees, states in relevant part that "no such committee shall have authority as to the

following matters:  (1) The submission to shareholders of any action that needs shareholders'

approval under this chapter." The committee that Enzo allegedly formed and the powers

delegated to it with respect to the shareholders' meeting violates this provision as the action to be

taken at the shareholders' meeting (i.e., the election of directors) requires the "shareholders'

approval."

60.     Further, Mr. Rabbani was not given any advance notice of the revised

shareholders' meeting date or the record date.  It appears that the acceleration of the date of the

shareholders' meeting from that set forth in the November 25 Board Agenda was done in

response to, and in an attempt to unfairly diminish the likelihood of success of, Mr. Rabbani's

solicitation of proxies in support of his nominees and in opposition to the nominees of the

Company.

**On December 23, 2009, the Defendants Filed a Proxy Statement
Containing Material Mistatements and Omissions of Facts**

61.     On December 23, 2009, the Company issued its Proxy Statement which, among

other things, failed to disclose "the name of any director of the registrant who has informed the

registrant in writing that he intends to oppose any action intended to be taken by the registrant

and indicate the action which he intends to oppose" as required by Section 14.  Indeed, at the

time the Company filed its Proxy Statement, it was in possession of clear, unambiguous, written

notice of a director's intention to oppose the Company's action at the shareholders' meeting, i.e.,

the nomination and election of the Company's slate of directors.  Thus, the Proxy Statement filed

by the Defendants contained material misstatements and omissions in violation of Regulation

14A of the Securities Exchange Act of 1934, as amended.

**On December 28, 2009, Mr. Rabbani Formally Requested the Securities
and Exchange Commission to Investigate the Material Misstatements and
Omissions in the Defendants' Proxy Statement and the Defendants'
Communications with Stockholders Regarding the Shareholders' Meeting**

62.     On December 28, 2009, Mr. Rabbani, through counsel, requested that the

Division of Corporation Finance of the United States Securities and Exchange Commission (the

"SEC") commence an investigation with respect to certain violations of federal securities laws

and regulations promulgated by the SEC.  In his complaint letter, Mr. Rabbani alerted the SEC to

the Company's failure to follow federal securities laws, rules, and regulations and requested,

among other things, that the SEC (i) cause the Company to file a preliminary proxy statement on

Schedule 14A that includes disclosure of, among other things, Mr. Rabbani's slate of director

nominees that have been properly nominated under the Company's By-Laws and Mr. Rabbani's

intention to oppose the Company's slate of directors at the shareholders' meeting, and (ii)

investigate the Company's communications with its stockholders -- prior to the filing of the

Proxy Statement on December 23, 2009 -- regarding Mr. Rabbani and his nomination of a slate

of director nominees.

63.     Indeed, upon information and belief, the Defendants engaged in communications

with shareholders regarding Mr. Rabbani and his candidates prior to the filing of the Proxy

Statement on December 23, 2009, in violation of Rule 14a-3(a)(1), which prohibits the Company

from soliciting shareholders prior to the filing of a proxy statement.

64.     Thereafter, on December 31, 2009, at approximately 1:30 p.m., Mr. Rabbani's

counsel had a telephone conversation with Jim Lopez, the legal branch chief of the Washington

D.C. office of the Division of Corporation Finance at the SEC, regarding Mr. Rabbani's

December 28, 2009 letter.  Mr. Lopez called to let Mr. Rabbani's counsel know that the Division

of Corporation Finance staff had reviewed the materials, were sensitive to the concerns raised,

and that they will take the claims under advisement as the staff assessed filings by the Company and Mr. Rabbani in connection with this matter. Among other things, Mr. Lopez stated that the SEC takes these types of allegations very seriously.

65.    Regardless of whether the Defendants began unlawfully soliciting votes in connection with the Company's slate of directors prior to the issuance of its Proxy Statement on December 23, 2009 -- a matter brought by Mr. Rabbani to the attention of the SEC -- since at least December 23, 2009, the Company has, upon information and belief, solicited proxies using the materially false Proxy Statement which, as noted, does not disclose Mr. Rabbani's nomination of candidates.

66.    On January 8, 2010, Mr. Rabbani filed his preliminary proxy statement.[2]

**FIRST CLAIM FOR RELIEF**
**(Injunctive Relief)**
**(Against all Defendants)**

67.    Plaintiff repeats and realleges each of his allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68.    The Company is bound by the express and implied terms of its By-Laws and the Individual Defendants owe fiduciary duties to Mr. Rabbani. Defendant Enzo breached the By-Laws, and the Individual Defendants breached their fiduciary duties to Mr. Rabbani, by failing to recognize Mr. Rabbani's nomination of independent directors. In addition, the Defendants acted improperly by accelerating the date of the shareholders' meeting to January 29, 2010 for the

---

[2] In this preliminary proxy statement, Mr. Rabbani submitted two candidates for election to Enzo's board rather than the three he had nominated in the Nomination Letter. The third nominee, Dr. Joseph Gulfo, was not included in the proxy statement because Mr. Rabbani was recently informed by Dr. Gulfo that he was not able to proceed. As stated, up until the Company filed its Proxy Statement on December 23, 2009 -- which reported, for the very first time, the date of the "annual" shareholders' meeting as January 29, 2009 -- Mr. Rabbani reasonably believed that he would have the ability to adjust the nomination of his slate of directors (including to nominate a new third candidate).

apparent purpose of entrenching the Individual Defendants in their lucrative management positions and disenfranchising Plaintiff and other shareholders of their right to effect change at the Company.

69.     As a direct and proximate result of the Defendants' conduct, Mr. Rabbani has suffered and will continue to suffer irreparable injury and damages.

70.     Unless Defendants are enjoined and restrained, Defendants will conduct the shareholders' meeting on January 29, 2010 and Mr. Rabbani will not have the benefit of having his slate of directors included on the ballot.

71.     Plaintiff has no adequate remedy at law.

72.     As a result of the foregoing, Mr. Rabbani is entitled to an Order of this Court enjoining Defendants from conducting a meeting of the shareholders of Enzo on January 29, 2010, as purportedly noticed on December 23, 2009, and postponing the date of the shareholders' meeting to no earlier than March 15, 2010.

### SECOND CLAIM FOR RELIEF
#### (Declaratory Judgment)
#### (Against all Defendants)

73.     Plaintiff repeats and realleges each of his allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.     According to Mr. Rabbani, his November 20, 2009 letter to the Company (the "Nomination Letter") properly nominated independent candidates for election as directors at the Company's next meeting of stockholders pursuant to the procedure set forth in Article II, Section 15 of the By-Laws.  According to the Defendants, Mr. Rabbani's Nomination Letter failed to comply with the requirements of Section 15 of Article II of the By-Laws.

75.     Accordingly, an actual, bona fide controversy exists between the parties regarding

whether Mr. Rabbani properly nominated independent candidates for election as directors at the Company's next meeting of stockholders pursuant to the procedure set forth in Article II, Section 15 of the By-Laws, and Mr. Rabbani requests a declaration that his Nomination Letter properly nominated such candidates and that the Company's purported "reasons" for rejecting the Nomination Letter are false, baseless, inadequate and/or pretextual.

### THIRD CLAIM FOR RELIEF
### (Violations of Section 14(a) of the Securities Exchange Act and SEC Rule 14a)
### (Against all Defendants)

76.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 75 above as though fully set forth herein.

77.    On December 23, 2009, Defendants filed with the SEC a definitive proxy statement which contained material misstatements and omissions (the "Proxy Statement").

78.    Specifically, the Proxy Statement failed to disclose "the name of any director of the registrant who has informed the registrant in writing that he intends to oppose any action intended to be taken by the registrant and indicate the action which he intends to oppose" as required by Item 4.a.1. of Schedule 14A.

79.    At the time the Company filed the Proxy Statement on December 23, 2009, it was in possession of clear, unambiguous, written notice of a director's intention to oppose the Company's action at the annual shareholders' meeting, i.e., the nomination and election of the Company's slate of directors.  Indeed, the Nomination Letter and subsequent written communications with the Company (as set forth above) clearly established Plaintiff's opposition to the Company's slate of directors at the upcoming shareholders' meeting and Plaintiff's intent to solicit proxies in opposition to the board and in support of his nominees.

80.    Defendants filed the Proxy Statement for the purpose and with the effect of

deceiving Enzo's shareholders and causing them to give Enzo their proxies to vote at the upcoming shareholders' meeting.

81.    As a result of the Defendants' violations of the federal securities laws as set forth above, Mr. Rabbani has been irreparably harmed and has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### (Violations of Section 14 of the Securities Exchange Act and Regulation 14-A)
### (Against all Defendant)

82.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 81 above as though fully set forth herein.

83.    As set forth above, the Proxy Statement failed to disclose "the name of any director of the registrant who has informed the registrant in writing that he intends to oppose any action intended to be taken by the registrant and indicate the action which he intends to oppose" as required by Item 4.a.1. of Schedule 14A.

84.    Had the Company complied with its disclosure obligation under Item 4.a.1. of Schedule 14A, it would have been subject to Rule 14a-6(a), which states that  if "the registrant comments upon or refers to a solicitation in opposition in connection with the meeting in its proxy material" it must file a "preliminary" proxy statement on Schedule 14A that is subject to a ten calendar day SEC review period.

85.    Rather than file a "preliminary" proxy statement, on December 23, 2009 the Company filed a "definitive" proxy statement in violation of Rule 14a-6.

86.    As a result of the Defendants' violations of the federal securities laws as set forth above, Mr. Rabbani has been irreparably harmed and has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### (Violations of Section 14(a) of the Securities Exchange Act and SEC Rule 14a)
### (Against all Defendants)

87.　　Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 86 above as though fully set forth herein.

88.　　Rule 14a-3(a)(1) requires that a publicly filed proxy statement meeting the requirements of Schedule 14A be delivered to a stockholder prior to or contemporaneous with any communication that is deemed to be a solicitation of a proxy and, thus, prohibits the Company from soliciting shareholders prior to the filing of a proxy statement.

89.　　Upon information and belief, the Defendants engaged in communications with shareholders regarding Mr. Rabbani and his director nominees prior to the filing of the Proxy Statement on December 23, 2009, in violation of Rule 14a-3(a)(1).

90.　　As a result of the Defendants' violations of the federal securities laws as set forth above, Mr. Rabbani has been irreparably harmed and has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)
### (Against the Individual Defendants)

91.　　Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 above as though fully set forth herein.

92.　　The Individual Defendants owe Mr. Rabbani fiduciary duties to exercise the highest degree of honesty, fairness, and good faith in their dealings with him.

93.　　The Individual Defendants breached their fiduciary duties to Mr. Rabbani by, among other things, (i) refusing to acknowledge Mr. Rabbani's slate of directors, (ii) initially refusing to identify any specific deficiencies in the Nomination Letter, (iii) subsequently identifying only false, baseless, inadequate and/or pretextual "reasons" for refusing to

acknowledge Mr. Rabbani's slate of directors, and (iv) accelerating the date of the shareholders' meeting apparently for the purpose of limiting Mr. Rabbani's time to prepare for a proxy contest that the Defendants are attempting to terminate through their unlawful and manipulative means described herein.

94.    As a result of the Individual Defendants' breaches of their fiduciary duties to Mr. Rabbani, he has been irreparably harmed and has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF
### (Violations of Section 717(a) of the New York BCL)
### (Against the Individual Defendants)

95.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 94 above as though fully set forth herein.

96.    Section 717(a) requires a director to perform his duties "in good faith and with that degree of care which an ordinary person in a like position would use under similar circumstances."

97.    The Individual Defendants violated Section 717(a) of the New York BCL by, among other things, (i) refusing to acknowledge Mr. Rabbani's slate of directors, (ii) initially refusing to identify any specific deficiencies in the Nomination Letter, (iii) subsequently identifying only false, baseless, inadequate and/or pretextual "reasons" for refusing to acknowledge Mr. Rabbani's slate of directors, and (iv) accelerating the date of the shareholders' meeting apparently for the purpose of limiting Mr. Rabbani's time to prepare for a proxy contest that the Defendants are attempting to terminate through their unlawful and manipulative means described herein.

98.    As a result of the Individual Defendants' violations of Section 717(a) of the New York BCL, Mr. Rabbani has been irreparably harmed and has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF
### (Breach of Contract)
### (Against Defendant Enzo)

99.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 98 above as though fully set forth herein.

100.    Section 15 of Article II of the Company's Amended and Restated By-Laws (the

"By-Laws"), which sets forth the process for nominating director candidates of the Company,

provides as follows:

> Shareholder Nomination of Director Candidates. Notification of
> Nomination. Subject to the rights of holders of any class or series
> of stock having a preference over another class or series of stock as
> to dividends or upon liquidation to elect additional directors under
> specified circumstances, nominations for the election of directors
> may be made by the Board or a proxy committee appointed by the
> Board or by any shareholder entitled to vote in the election of
> directors generally. However, any shareholder entitled to vote in
> the election of directors generally may nominate one or more
> persons for election as directors at a meeting only if written notice
> of such shareholder's intent to make such nomination or
> nominations has been given, either by personal delivery or by
> United States mail, postage prepaid, to the Secretary of the
> Corporation not later than (i) with respect to an election to be held
> at an annual meeting of shareholders, 60 days in advance of such
> meeting, and (ii) with respect to an election to be held at a special
> meeting of shareholders for the election of directors, the close of
> business on the seventh day following the date on which notice of
> such meeting is first given to shareholders. Each such notice shall
> set forth: (a) the name and address of the shareholder who intends
> to make the nomination and the person or persons to be nominated;
> (b) a representation that the shareholder is a holder of record of
> stock of the Corporation entitled to vote at such meeting and
> intends to appear in person or by proxy at the meeting to nominate
> the person or persons specified in the notice; (c) a description of all
> arrangements or understandings between the shareholder and each
> nominee and any other person or persons (naming such person or
> persons) pursuant to which the nomination or nominations are to
> be made by the shareholder; (d) such other information regarding
> each nominee proposed by such shareholder as would be required
> to be included in a proxy statement filed pursuant to the proxy
> rules of the Securities and Exchange Commission, had the nominee

been nominated, or intended to be nominated, by the Board; and (e) the consent of each nominee to serve as a director of the Corporation if so elected. The chairman of the meeting may refuse to acknowledge the nomination of any person not made in compliance with the foregoing procedure.

By-Laws, Art. II, § 15 (emphasis added).

101.    Mr. Rabbani complied with the procedures set forth in Section 15 of Article II of the By-Laws by sending the Nomination Letter to the Company on November 20, 2009.

102.    The By-Laws imposed a contractual obligation on the Company to follow the process and procedures set forth in Section 15 of Article II.

103.    The Company's refusal to acknowledge Mr. Rabbani's nominations constituted a material breach of the By-Laws.

104.    As a result of the Company's breach, Mr. Rabbani has been irreparably harmed and has no adequate remedy at law.

### NINTH CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (Against Defendant Enzo)

105.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 104 above as though fully set forth herein.

106.    The By-Laws contain an implied covenant of good faith and fair dealing.

107.    The Company breached the implied covenant of good faith and fair dealing by, inter alia, (i) refusing to acknowledge Mr. Rabbani's slate of directors, (ii) initially refusing to identify any specific deficiencies in the Nomination Letter, (iii) subsequently identifying only false, baseless, inadequate and/or pretextual "reasons" for refusing to acknowledge Mr. Rabbani's slate of directors, and (iv) accelerating the date of the shareholders' meeting apparently for the purpose of limiting Mr. Rabbani's time to prepare for a proxy contest that the

Defendants are attempting to terminate through their unlawful and manipulative means described herein.

108.    The Company's conduct deprived Mr. Rabbani of the fruits of the By-Laws and its actions are contrary to the spirit of the By-Laws.

109.    Through its conduct, the Company breached the covenant of good faith and fair dealing.

110.    Prior to the breach of the By-Laws by the Company, Mr. Rabbani complied with Section 15 of Article II.

111.    As a result of the breach by the Company, Mr. Rabbani has been irreparably harmed and has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shahram K. Rabbani respectfully prays that the Court render Judgment in his favor and against Defendants as follows:

(1)    On the first, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action, a preliminary and permanent injunction:  (a) enjoining Defendants from conducting an Enzo shareholders' meeting on January 29, 2010, as purportedly noticed on December 23, 2009; and (b) postponing the date of the shareholders' meeting to no earlier than March 15, 2010; and (c) requiring Defendants to acknowledge the candidates nominated by Mr. Rabbani.

(2)    On the second cause of action, an order:  (a) declaring that the objections by Defendants to Plaintiff's November 20, 2009 letter nominating a slate of three independent candidates for election to the board of directors of Enzo at the next meeting of shareholders of the Company (the "Nomination Letter") are without merit; and (b) declaring that, through the Nomination Letter, Plaintiff properly followed the process for nominating candidates for election

to the board of directors of Enzo at the next meeting of shareholders of the Company; and

(3)    On all of the causes of action, costs and disbursements incurred in connection with this action (including, but not limited to, any costs incurred as a result of Defendants' wrongful conduct); and

(4)    On all of the cause of action, reasonable attorneys' fees and costs ; and

(5)    Such other and further relief as the Court may deem just, equitable, and proper.

Dated:  January 12, 2010

SEYFARTH SHAW LLP

By: _____

Brian S. Cousin, Esq. (BC-5386)
Jonathan E. Goldberg, Esq. (JG-7374)
Christopher F. Robertson, Esq.
620 Eighth Avenue
New York, New York  10018
(212) 218-5500
*Attorneys for Plaintiff Shahram K. Rabbani*