UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SHAHRAM K. RABBANI,                     :
                        Plaintiff,      :
                                        :    10 Civ. 170 (DLC)
            -v-                         :
                                        :    OPINION AND ORDER
ENZO BIOCHEM, INC., DR. ELAZAR RABBANI, :
BARRY W. WEINER, STEPHEN B.H. KENT,     :
IRWIN C. GERSON, BERNARD L. KASTEN, and :
MELVIN F. LAZAR,                        :
                        Defendants.     :
                                        :
----------------------------------------X

Appearances:

For Plaintiff Shahram K. Rabbani:
Brian S. Cousin
Jonathan E. Goldberg
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018

For Defendants Enzo Biochem, Inc., Dr. Elazar Rabbani, Barry W.
Weiner, Stephen B.H. Kent, Irwin C. Gerson, Bernard L. Kasten,
and Melvin F. Lazar:
Kenneth A. Lapatine
Jeffrey R. Mann
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

DENISE COTE, District Judge:

    Plaintiff sought a preliminary injunction to enjoin Enzo

Biochem, Inc. ("Enzo") from conducting its annual shareholder

meeting ("Shareholder Meeting") on January 29, 2010.  The motion

seeking a preliminary injunction was denied in an Order dated

January 27, 2010, with an opinion to follow.  This is the opinion.[1]

The plaintiff Shahram K. Rabbani ("Rabbani") is a co-founder of Enzo and a member of its board.  Rabbani brings claims against Enzo and six individual defendants who are Enzo directors for violations of federal securities laws and New York statutory and common law.[2]  Rabbani filed a motion for a preliminary injunction on January 11.  He seeks, inter alia, a delay of the Shareholder Meeting until no earlier than March 15, 2010.

Pursuant to this Court's individual practices, and with the consent of the parties, the direct testimony of the witnesses for the preliminary injunction hearing was submitted by affidavit.  Rabbani submitted declarations from himself; Andre de Bruin, at one time nominated by Rabbani as a candidate for director of Enzo; and Norma J. McDaniel, Avie Roy, William R. Stansbury, Jan W. Vandersande, Marvin Miller, and Richard

---

[1] This opinion was in the process of being filed on the morning of January 28 when Magistrate Judge Peck's chambers informed the Court that the parties had settled their disputes.  Plaintiff having filed notice of appeal, this opinion is being filed today.

[2] Rabbani filed this action in state court on January 8, and the defendants removed the action to this Court on January 11. Rabbani filed an amended complaint on January 12.

Miller, all shareholders of record of Enzo.[3]  The defendants
submitted declarations from defendants Barry Weiner ("Weiner"),
Stephen B.H. Kent, Irwin C. Gerson, Bernard L. Kasten, and
Melvin F. Lazar; Andrew R. Crescenzo ("Crescenzo"), the Senior
Vice President of Finance for Enzo; and David C. Goldberg
("Goldberg"), the Vice President of Corporate Development at
Enzo.  Following the service of the preliminary injunction
papers, the parties consented to the submission of this motion
on that paper record.  Based on those submissions, the following
constitutes the Court's findings of fact and conclusions of law.

BACKGROUND

        Enzo is a publicly held corporation organized under the
laws of the State of New York.  It is a life sciences and
biotechnology company focused on harnessing genetic processes to
develop research tools, diagnostics, and therapeutics.  Rabbani
co-founded Enzo in 1976 with his brother, Dr. Elazar Rabbani
(Dr. Rabbani), and their brother-in-law, Weiner.  Rabbani
previously served as the company's chief operating officer and
chief financial officer.  More recently, he served until March
5, 2009 as the president of the company's largest subsidiary;
and until November 25, 2009 as Secretary and Treasurer of Enzo.
Rabbani owns approximately 3.8% of the outstanding shares of

---

[3] Rabbani submitted an additional affidavit by a shareholder, but
the name of the affiant is illegible.

Enzo.  Dr. Rabbani is the Chief Executive Officer, Chairman of the Board, and Secretary of Enzo.  Weiner is President, Chief Financial Officer, Principal Accounting Officer, Treasurer, and a director of the company.

There are seven members of Enzo's board of directors, split into three classes.  Each class serves a term of three years. There were three vacancies on the board to be filled in January 2010.

Enzo's Bylaws

Several of the issues raised in this litigation rest on the application of Enzo's Amended and Restated By-Laws ("the Bylaws").  The pertinent provisions of the Bylaws include its description of the method by which a shareholder may nominate candidates to serve as directors of the Company.  The Bylaws require that each notice of intent to nominate directors contain specified information as well as

> such other information regarding each
> nominee proposed by such shareholder as
> would be required to be included in a proxy
> statement filed pursuant to the proxy rules
> of the Securities and Exchange Commission,
> had the nominee been nominated, or intended
> to be nominated, by the Board.

(Emphasis supplied.)  The Bylaws allow the chairman of the meeting to "refuse to acknowledge the nomination of any person not made in compliance with the foregoing procedure."

According to the Bylaws, a shareholder may nominate directors on written notice given either sixty or seven days in advance of a shareholder meeting, depending on whether the shareholder meeting is the annual meeting or a special meeting for the election of directors.  The Bylaws provide:

> only if written notice of such shareholder's intent to make such nomination has been given . . . to the Secretary of the Corporation not later than (i) with respect to an election to be held at an annual meeting of shareholders, <u>60 days</u> in advance of such meeting, and (ii) with respect to an election to be held at a special meeting of shareholders for the election of directors, the close of business on the seventh day following the date on which notice of such meeting is first given to shareholders.

(Emphasis supplied.)  Under the Bylaws, the annual meeting must take place in the month of January.  Specifically, the Bylaws require that the annual shareholder meeting "be held during the sixth month following the close of the Corporation's fiscal year."  Since Enzo's fiscal year ends in July, the meeting must be held during the month of January.

The Bylaws also require that shareholders be given written notice of all shareholder meetings:

> Notice of the place, date and time of the holding of each annual and special meeting of the shareholders and, in the case of a special meeting, the purpose or purposes, thereof, shall be given personally or by mail in a postage prepaid envelope to each shareholder entitled to vote at such meeting, not less than ten nor more than

> fifty days before the date of such
> meeting . . . .

### Rabbani Notifies Enzo of Intent to Nominate Directors

Enzo's annual Form 10-K, filed with the U.S. Securities and Exchange Commission ("SEC") on October 14, 2009, disclosed that the annual shareholder meeting would be held "on or about January 26, 2010." On October 21, Goldberg informed the board of directors that the annual shareholder meeting would take place on January 19, 2010. As already noted, the Bylaws require the annual meeting to be held no later than January, and that had been the company's practice for approximately the last twenty years.

In an effort to comply with the Bylaws' requirement of sixty days notice of nominations in advance of an annual shareholder meeting, on November 20, Rabbani advised Enzo in writing that he was nominating three persons for election to the board of directors ("the Nomination Letter"): Joseph V. Gulfo, Steven Katz, and Andre de Bruin.

On November 23, Enzo distributed an agenda for a November 25 board meeting that listed a February 9 date for the annual meeting. It read, "Notice of Annual Meeting Information: Record Date—December 14, 2009; Meeting date—February 9, 2010." Consistent with the agenda, on that same date, Crescenzo notified Broadridge Investor Communications Solutions

("Broadridge"), the proxy server hired by Enzo; American Stock
Transfer & Trust Company, Enzo's transfer agent ("American Stock
Transfer"); and an entity called CEDE & Co., described as the
company in whose name most "street named" shares are held
(collectively, "the Proxy Entities"), that the annual
shareholder meeting date was being changed to February 9.

Almost immediately, however, Enzo reversed course and
decided to proceed with its annual meeting in January, as
required by its Bylaws.  On November 24, Enzo's outside counsel
sent an email to Crescenzo that said "Changing annual mtg date
to january 29."  Crescenzo promptly informed some of the Proxy
Entities that the meeting date would be January 29.[4]  Neither
Enzo nor its counsel advised Rabbani at that time of the January
29 meeting date.

November 25 Board Meeting

At the November 25 meeting of Enzo's board of directors,
the board removed Rabbani as Secretary and Treasurer.  It also
established a Stockholder Meeting Committee ("Committee")
composed of Dr. Rabbani and Weiner.  It explained the reasons
for creating the special committee in a resolution, which reads
in pertinent part:

_____

[4] Crescenzo and Weiner assert that the date of the annual meeting
remained in flux for some time due to the Board's interest in
nominating Dr. Mikael Dolsten as a director (although they
eventually abandoned this effort and named Kent as a nominee
around December 18).

> WHEREAS, to properly and more efficiently
> manage . . . and work with the Company's
> management and outside professional advisors
> with respect to planning, strategizing,
> soliciting votes and convening the Company's
> 2009 Annual Meeting or, to the extent such
> meeting is not held on or before January 31,
> 2010, any subsequent special meeting of the
> Company's stockholders at which Company
> directors are to be elected and the matters
> to be acted upon and presented thereat
> including, without limitation, <u>communicating</u>
> <u>with the Company's stockholders and</u>
> <u>addressing any potential opposition election</u>
> <u>campaign to be instituted by Shahram K.</u>
> <u>Rabbani</u> or any other stockholder of the
> Company, the Company's directors have
> determined that it is in the best interest
> of the Company for a committee of the Board
> to be constituted and established for the
> aforementioned purposes.

(Emphasis supplied.)  The Resolution also states that the

Committee "shall report from time to time to the entire Board."

At the November 25 meeting, Rabbani asked Enzo's outside

counsel what had happened to the shareholder meeting date of

February 9th listed on the agenda, and the outside counsel told

him that the "February 9 date was out" and that there was no new

shareholder meeting date.  No one at the meeting advised Rabbani

that the annual meeting would be held in January, although as

the Resolution quoted above reflects, the Board was on notice

that if the annual meeting was not held before the end of

January, any subsequent meeting would be a "special meeting."

Also on November 25, Dr. Rabbani wrote Rabbani to reject

the Nomination Letter.  Dr. Rabbani's letter asserted that the

Nomination Letter "fails to comply with the requirements of
Section 15 of Article II of the Company's Amended and Restated
By-Laws currently in effect.  It is the Committee's and the
Board's position, therefore, that your letter is invalid and of
no effect."  The letter went on to say that, notwithstanding
that conclusion, "the Company intends, voluntarily, to provide
you a list of the record and beneficial owners of the Company's
common stock."  It also confirmed that the Board had removed
Rabbani as an officer of the Company and reminded him of his
fiduciary duties to the company and its stockholders.

Rabbani and Enzo Speak with Two Shareholders

        From November 25 until December 30, Rabbani and Enzo and
their counsel exchanged a series of letters debating the
effectiveness of the Nomination Letter.  Rabbani did not
resubmit the Nomination Letter to include the information that
Enzo alleged was missing or incomplete.

        On November 30, the Committee set December 29 as the record
date for determining shareholders of Enzo for purposes of voting
at the shareholder meeting.  Enzo's outside counsel also advised
American Stock Transfer on November 30 that Rabbani had been
terminated as an officer of Enzo.  The letter said:

> You are hereby instructed not to communicate
> with, or divulge any information to, any
> individual who is not an officer,
> representative or advisor of the Company
> regarding any matter relating to the

9

> Company, including, without limitation, the
> 2009 Annual Meeting, the record date
> therefore or any other matter referenced in
> this letter.  Please advise the undersigned
> immediately if any request for such
> information is made by Shahram K. Rabbani or
> any of his representatives or advisors.

The letter asserted that the date for the shareholder meeting
had not yet been set by the board.

On December 1, Enzo contracted with a proxy solicitation
firm called Altman Group, Inc. for representation "in a proxy
contest for board seats at the 2010 Annual Meeting" and
discussed the possibility of filing a preliminary proxy.  Also
on December 1, Enzo sent Rabbani the names, addresses, and
security positions of the shareholders of Enzo, as Rabbani had
demanded in his Nomination Letter.  It insisted again that it
was providing the names "as a courtesy" and not because the
Nomination Letter was effective or valid.

During this period of time, Rabbani spoke with two of
Enzo's largest shareholders to determine whether they would
consider supporting a competing slate of director candidates and
to express his dissatisfaction with Enzo's management.  In
December, each of these shareholders advised Weiner that Rabbani
had made allegations about Enzo's poor management and
performance.  At his deposition, Weiner explained that when he
met with each of the shareholders, he presented "facts" in
response to their inquiries.  He acknowledged in his deposition

that it was his hope that the "shareholders will make an
appropriate and educated decision as to what is in their
interest and the best interest of the company."

On December 9, Broadridge sent an email to Rabbani's proxy
solicitor, Mackenzie, in response to Mackenzie's inquiry whether
there were any "dates on system."  The email replied: "r/d 12/29
meet date 2/23/10," presumably referring to the Record Date and
Shareholder Meeting date.  Mackenzie conveyed this information
to Rabbani's attorney in "mid-December."  On December 18, the
Committee officially set January 29, 2010 as the date for the
annual meeting.[5]

Enzo Files Proxy Statement

On December 23, Enzo filed its definitive proxy statement
("Proxy Statement") indicating that the annual shareholder
meeting was being called for January 29, 2010 (1) to elect to
the company's board the slate preferred by management; (2) to
ratify the appointment of independent auditors for the upcoming
fiscal year; and (3) to transact any other business as may
properly come before the Shareholder Meeting.  The statement
included no mention of Rabbani's Nomination Letter or the

---

[5]Enzo asserts that it waited until December 18 to fix the final
date because it took that long for Enzo to abandon the idea of
nominating Dr. Mikael Dolsten to become a director.  Dr. Dolsten
needed clearance from his employer to serve as an Enzo director,
and that clearance was not forthcoming.  Rabbani has presented
evidence that Enzo was on notice before December 18 that the
clearance would not be given.

existence of a competing slate of director candidates.  This was the first public notification of the meeting date and the first time that Rabbani and the other Enzo directors who were not on the Committee learned of the date.  Rabbani protested on December 28 that the setting of the record date without board action was "defective."  On December 31, Enzo provided Rabbani the names, addresses, and security positions of all holders of common stock as of the Record Date of December 29.

Rabbani Files Preliminary Proxy Statement

On January 8, 2010, the date that Rabbani filed this lawsuit in state court, he also filed a preliminary opposition proxy statement ("Rabbani Proxy Statement") and related solicitation materials with the SEC.  The Rabbani Proxy Statement reports that Rabbani will be nominating two directors: Andre de Bruin and Steven Katz.  It explains that while Rabbani had originally notified Enzo of an intention to nominate three candidates, only two ultimately agreed to be nominated.  It also reports that Rabbani "intends to seek to have the meeting for the election of directors postponed to a later date in order to allow adequate time for stockholders to evaluate the director nominees and for us to solicit proxies for the election of the Independent nominees," and that if the meeting were postponed, he intended to nominate a third candidate.

The Rabbani Proxy Statement contained several required disclosures which were not included in the Nomination Letter.[6] The defendants contend that this filing was their first notice of an opposing "solicitation" of shareholders by Rabbani, as that term is defined in the securities laws.

Enzo's Supplement to its Proxy Statement

On January 13, Enzo filed a supplement to its Proxy Statement ("the Supplement").  The Supplement acknowledges Rabbani's Proxy Statement and informs shareholders that Rabbani intends to solicit votes for two or three "insurgent director-candidates."  While it does not name those candidates or provide any information about them, the Supplement does direct shareholders to the SEC's website, where it says that Rabbani's Proxy Statement could be found.  In a section called "Supplemental Information," Enzo discloses as well the Nomination Letter and explains that the Letter "sought to notify the Company of [Rabbani's] purported nomination of a slate of

---

[6] For example, the Rabbani Proxy Statement disclosed:  "no Independent Nominee or any associate of an Independent Nominee is a party adverse to the Company or any of its subsidiaries or has a material interest adverse to the Company or any of its subsidiaries in any material proceeding," and that "Shahram K. Rabbani is the brother of Elazar Rabbani . . . and the brother-in-law of Barry Weiner . . . .  Except as set forth herein above, there are no family relationships (as defined in Item 401(d) of Regulation S-K) between any of the Independent Nominees or between any of the Independent Nominees and any director or executive officer of the Company."

three insurgent Class I directors."  It summarizes many of the
facts laid out here, including Enzo's position that the
Nomination Letter was defective and Rabbani's filing of this
litigation.

As of January 18, only one of Rabbani's candidates remained
willing to submit his name to the shareholders.  Andre de Bruin
had withdrawn his name from consideration.[7]

DISCUSSION

Rabbani's January 12 amended complaint ("Complaint"),
brings three federal claims against all defendants, two state
law claims against Enzo, and two state law claims against the
individual defendants.  The Complaint seeks an injunction
postponing the date of the shareholders meeting from January 29
to March 15 and requiring the defendants to acknowledge the
"candidates" nominated by Rabbani.  It also seeks a declaration
that Enzo's objections to the Nomination Letter are without
merit, and that Rabbani "followed the process for nominating
candidates."  Finally, Rabbani seeks recovery of his costs and
reasonable attorneys' fees and costs.

The January 11 motion for a preliminary injunction seeks
solely to have the Shareholder Meeting postponed from January 29

---

[7] Rabbani contends that Enzo made a "veiled threat" of litigation
against a company for which de Bruin is a director, causing his
withdrawal.  Rabbani has not presented sufficient evidence from
which to reliably infer that Enzo engaged in any misconduct, and
thus this accusation will not be further discussed.

to March 15.  "To obtain a preliminary injunction, a plaintiff must establish: (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in its favor." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005) (citation omitted).  When the injunction that a party seeks would alter rather than maintain the status quo, the standard is higher.  "In such case, the movant must show a clear or substantial likelihood of success." Bronx Household of Faith v. Board of Educ. of City of New York, 331 F.3d 342, 349 (2d Cir. 2003) (citation omitted).  Since Rabbani has failed to demonstrate a likelihood of success on the merits, he has necessarily failed to show a substantial likelihood of success.  It is therefore unnecessary to explore further whether the relief Rabbani seeks should be characterized as a mandatory injunction.

1. Likelihood of Success

    A. Section 14 Claims

    The plaintiff asserts three claims under the Securities Exchange Act ("Exchange Act") and the Rules the SEC has promulgated to enforce the Act.  Section 14(a) of the Exchange Act prohibits the solicitation of proxies "in contravention of

15

such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78n(a).  The SEC has promulgated Schedule 14A, Rule 14a-101, 17 C.F.R. § 240.14a-101, and Regulation S-K, 17 C.F.R., Part 229 (2006), to implement § 14(a).

The plaintiff alleges that the defendants filed a proxy statement containing material misstatements and omissions of fact, which is prohibited by Rule 14a-9.[8]  Rule 14a-9 prohibits proxy solicitation "by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ."  17 C.F.R. § 240.14a-9.  See also Seinfeld v. Gray, 404 F.3d 645, 650 (2d Cir. 2005).  The SEC "promulgated Rule 14a-9 with the goal of preserving for all shareholders who are entitled to vote, not just for those who sponsor proposals, the right to make decisions based on information that is not false or misleading."  United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190, 1198

---

[8] While the Complaint does not identify Rule 14a-9, it alleges that the Proxy Statement contained material misstatements and omissions, and alleges violations of § 14(a), which prohibits the solicitation of proxies in a way that violates any rule that the Commission has prescribed.  15 U.S.C. § 78n(a).

(2d Cir. 1993).  There is an implied right of action under Rule

14a-9.  Minzer v. Keegan, 218 F.3d 144, 148 (2d Cir. 2000).

     To succeed on a claim of omission, a plaintiff must

establish materiality.

> Omission of information from a proxy
> statement is actionable if either the SEC
> regulations specifically require disclosure
> of the omitted information in a proxy
> statement, or the omission makes other
> statements in the proxy statement materially
> false or misleading.  To succeed on a Rule
> 14a-9 material omission claim, the plaintiff
> must show that there was a substantial
> likelihood that the disclosure of the
> omitted fact would have been viewed by the
> reasonable investor as having significantly
> altered the "total mix" of information made
> available.

Seinfeld, 404 F.3d at 650 (quoting TSC Indus., Inc. v. Northway,

Inc., 426 U.S. 438, 449 (1976)).  The "total mix" of information

includes only information "reasonably available to the

shareholders."  Koppel v. 4987 Corp., 167 F.3d 125, 132 (2d Cir.

1999) (citation omitted).  Materiality is satisfied if the

plaintiff shows "that the proxy solicitation itself, rather than

the particular defect in the solicitation materials, was an

essential link in the accomplishment of the transaction."  Mills

v. Electric Auto-Lite Co., 396 U.S. 375, 385 (1970).

     Rabbani alleges three violations of federal securities laws

in connection with the filing of the Proxy Statement.  First,

Rabbani asserts that Item 4(a)(1) of Schedule 14A required that

the Proxy Statement notify shareholders that Rabbani intended to offer a competing slate of candidates.  Second, Rabbani alleges that Rule 14a-6(a) required Enzo to file a preliminary proxy statement.  Third, Rabbani alleges that Enzo violated Rule 14a-3(a)(1) by improperly soliciting shareholders prior to the filing of the Proxy Statement.  Rabbani has not shown a likelihood of prevailing at trial on any of these three claims.

        i.  Proxy Statement's Failure to Describe Rabbani's Nomination

Rabbani alleges that the defendants violated Rule 14a-9 by not disclosing in Item 4(a)(1) of Schedule 14A the information from the Nomination Letter.  Item 4(a)(1) directs:  "If the solicitation is made by the registrant, so state.  Give the name of any director of the registrant who has informed the registrant in writing that he intends to oppose any action intended to be taken by the registrant and indicate the action which he intends to oppose."  Schedule 14A, Rule 14a-101, 17 C.F.R. § 240.14a-101.  The word "action" is left undefined in the regulations.

The parties debate whether the Nomination Letter informed Enzo that Rabbani "intends to oppose" Enzo's slate of directors.  As is discussed in further detail near the conclusion of this Opinion, Rabbani never commenced a proxy contest prior to the filing of the Proxy Statement.  Enzo contends that its duty to

disclose the Nomination Letter in the Proxy Statement was never triggered in the absence of more meaningful evidence that Rabbani actually would act to oppose its nominees.

Assuming solely for purposes of this motion that the plaintiff has shown a likelihood of proving at trial that the Proxy Statement should have included information about the Nomination Letter, Rabbani has nonetheless failed to show a likelihood of proving that the Supplement was inadequate to cure this alleged violation of Rule 14a-9.  The Supplement identified Rabbani as a director who intended to oppose the slate of directors nominated by Enzo's management and provided information to shareholders about where Rabbani's Proxy Statement could be found.  The Supplement was issued sixteen days (or eleven business days) before the Shareholder Meeting. As such it was sufficiently timely to allow shareholders to receive and consider the information.  See Caruso v. Metex Corp., No. CV 89-0571, 1992 WL 237299, at *10-11 (E.D.N.Y. July 30, 1992) (collecting cases).

Rabbani's hearing submissions do not show how the Supplement failed to cure the omission.[9]  Indeed, he barely

---

[9] In a footnote in his January 21 brief, Rabbani argues that the Supplement did not cure the defects of the original filing because, had Enzo filed a preliminary proxy and been subject to the ten day SEC review period, its solicitation would have been delayed two to three weeks.  Rabbani does not suggest, however,

mentions the Supplement, even though its filing and its impact
on this motion were a principal focus of the parties' January 12
conference with the Court.  In sum, Rabbani has not shown a
likelihood of success on his claim that the Proxy Statement was
filed in violation of Rule 14a-9.

       ii.  Enzo's Duty to File a Preliminary Proxy Statement

    Rabbani alleges that the defendants violated SEC Rule 14a-
6(a) by failing to file a preliminary proxy statement.  Rule
14a-6(a) requires the filing of a preliminary proxy statement
with the SEC ten calendar days in advance of the filing of the
final document, but provides exceptions to this requirement.  It
reads in pertinent part as follows:

> Five preliminary copies of the proxy
> statement and form of proxy shall be filed
> with the Commission at least 10 calendar
> days prior to the date definitive copies of
> such material are first sent or given to
> security holders . . . .  A registrant,
> however, <u>shall not file</u> with the Commission
> <u>a preliminary proxy statement</u>, form of proxy
> or other soliciting material to be furnished
> to security holders concurrently therewith
> if the solicitation relates to an annual (or
> special meeting in lieu of the annual)
> meeting, . . . <u>if the solicitation relates</u>
> <u>to any meeting of security holders at which</u>
> <u>the only matters to be acted upon are</u>:
>
> (1) <u>The election of directors</u>; [and/or]
> (2) The election, approval or ratification
> of accountant(s);
> . . . .

---

that the Supplement omitted any information that the securities
laws required it to include.

17 C.F.R. § 240.14a-6(a) (emphasis supplied).  Thus, when the business of the meeting will be limited to the items described in the rule, which includes the election of directors, no preliminary document must be filed.  But, this exception does not apply when the action to be taken at the meeting is contested.  The Rule explains that:  "This exclusion from filing preliminary proxy material does not apply if the registrant comments upon or <u>refers to a solicitation in opposition</u> in connection with the meeting in its proxy material."  <u>Id</u>. (emphasis supplied).

> The term "solicitation" is defined as:
> (i)   Any request for a proxy whether or not
>       accompanied by or included in a form
>       of proxy;
> (ii)  Any request to execute or not to
>       execute, or to revoke, a proxy; or
> (iii) The furnishing of a form of proxy or
>       other communication to security
>       holders under circumstances reasonably
>       calculated to result in the
>       procurement, withholding or revocation
>       of a proxy.
>       . . . .

17 C.F.R. § 240.14a-1(*l*).  Note 3 to Rule 14a-6 provides:  "For purposes of the exclusion from filing preliminary proxy material, a 'solicitation in opposition' includes:  (a) Any solicitation opposing a proposal supported by the registrant . . . ."  17 C.F.R. § 240.14a-6.

Rabbani has not shown a likelihood of proving at trial that Enzo violated the federal securities laws by failing to file a preliminary proxy statement.  Rabbani's contention is that the Proxy Statement should have been preceded by a preliminary proxy statement since the Nomination Letter was a solicitation that triggered the exclusion under Rule 14a-6(a).  Because the Nomination Letter did not constitute a "solicitation," however, there was no duty under Rule 14a-6(a) to file a preliminary proxy statement.  The Nomination Letter was directed at Enzo, not at its shareholders.  It was not a request for a proxy, to execute or revoke a proxy, or to furnish a form of proxy.  Therefore, Rabbani has not shown that he is likely to succeed on the claim premised on Rule 14a-6(a).

Rabbani points to SEC guidance to support his argument that Enzo was required to file a preliminary proxy statement.  SEC guidance is entitled to at least "some deference."  Reno v. Koray, 515 U.S. 50, 61 (1995); see also Conroy v. New York State Dept. of Correctional Services, 333 F.3d 88, 95 (2d Cir. 2003).  The SEC guidance upon which plaintiff relies, however, does not assist him.  The SEC published the following question and answer in 2001:

> Q:  May a registrant rely on Rule 14a-6(a)
> to file a proxy statement in definitive form
> in a contested proxy solicitation for the
> election of directors by simply not
> referring to the solicitation in opposition

in its proxy statement when the registrant
knows, or reasonably should know, of the
solicitation in opposition?

A:  No.  Rule 14a-9 prohibits a registrant
from omitting a material fact from its proxy
statement at the time of the solicitation.
The staff believes that it is inconsistent
with this provision of Rule 14a-9 when the
initial definitive proxy statement does not
disclose the existence of a solicitation in
opposition when the registrant knows, or
reasonably should know, of a solicitation in
opposition.  The staff believes the
existence of alternative nominees is
material to security holders' voting
decisions.  Further, it is not appropriate
for the registrant to omit this information
from its initial proxy statement and wait to
address the solicitation in opposition at a
later time in the solicitation.  It is also
inappropriate to merely disclose the
existence of the solicitation in opposition
in a press release issued at the same time
the registrant mails to shareholders the
definitive proxy statement that omits the
information.

SEC Division of Corporation Finance Manual of Publicly Available

Telephone Interpretations, Third Supplement, July 2001, Question

I.G.2, available at http://www.sec.gov/interps/telephone/

phonesupplement3.htm (last visited January 26, 2010) (emphasis

supplied).

        This guidance from the SEC is uncontroversial:  when there

has been a solicitation in opposition to the company's proposal,

a company cannot avoid its obligation to file a preliminary

proxy statement by simply omitting any reference to the

solicitation in its proxy statement.  That said, the guidance

still requires that there be a "solicitation in opposition" to
invoke the exception to Rule 14a-6(a).

      iii. Enzo's Oral Solicitation of its Shareholders

Rabbani's final federal claim is that the defendants
improperly solicited shareholders before the company filed its
Proxy Statement on December 23, in violation of Rule 14a-
3(a)(1).  Specifically, Rabbani asserts that Weiner met with two
of Enzo's largest shareholders in early and mid-December to
discuss Rabbani's communications with them about waging a proxy
fight and did not provide either shareholder at that time with
Enzo's proxy materials.

Rule 14a-3 prohibits solicitation "unless each person
solicited is concurrently furnished or has previously been
furnished with: (1) A publicly-filed preliminary or definitive
proxy statement, in the form and manner described in § 240.14a-
16, containing the information specified in Schedule 14A
(§ 240.14a-101)."  17 C.F.R. § 240.14a-3(a).  See MONY Group,
Inc. v. Highfields Capital Management, L.P., 368 F.3d 138,
147 (2d Cir. 2004)(finding irreparable harm from violation of
Rule 14a-3).

The SEC has interpreted Rule 14a-3 broadly to encompass any
activity which in the totality of the circumstances in
reasonably calculated to influence votes.  Its interpretation is
entitled to deference.  See S.E.C. v. Cavanagh, 445 F.3d 105,

114 n.20 (2d Cir. 2006) ("We owe deference to the SEC's

release"); <u>Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire</u>

<u>Pharmaceuticals Group PLC</u>, 298 F.3d 136, 145 n.8 (2d Cir. 2002)

("[B]ecause the SEC's 1996 Release is connected to the agency's

rule-making function  . . . [it] must be accorded weight by

us."). In 2004, the SEC advised that

> [T]he proxy rules apply to any person
> seeking to influence the voting of proxies,
> regardless of whether the person is seeking
> authorization to act as a proxy.  The rules
> apply not only to direct requests to
> furnish, revoke or withhold proxies, but
> also to communications that may indirectly
> accomplish such a result or constitute a
> step in a chain of communications designed
> ultimately to accomplish such a result. <u>SEC</u>
> <u>v. Okin</u>, 132 F.2d 784, 786 (2d Cir. 1943).
> The issue is whether the challenged
> communication, seen in the totality of
> circumstances, is "reasonably calculated" to
> influence the shareholders' votes. <u>Trans.</u>
> <u>World Corp. v. Odyssey Partners</u>, 561 F.
> Supp. 1311, 1320 (S.D.N.Y. 1983).

In the matter of John Joslyn, et al., Exchange Act Release No.

50588, 83 S.E.C. Docket 3127, 2004 WL 2387455, at *11 (October

26, 2004).

Weiner testified that he met with two shareholders at their

request to "present the facts."  Rabbani had been highly

critical of Enzo's management in his conversations with these

shareholders and they contacted Weiner to hear management's

response to his charges and to discuss other matters concerning

the company.  While Weiner acknowledged in his deposition that

he believed at the time of that meeting that it was in the
shareholders' best interest to vote for the candidates nominated
by Enzo's management, he was not asked and did not state in that
deposition that he asked the shareholders either to vote for the
management slate of candidates or to withhold their vote for any
competing slate of director candidates, or that he encouraged
them to do so in words or substance.  Rabbani has not pointed to
any passage from the Weiner deposition or any other evidence
that suggests that Weiner's responses to the shareholders'
inquiries was, in the totality of the circumstances, reasonably
calculated to influence their votes on the upcoming election of
directors.  Indeed, as of that time, Rabbani had failed to take
the several steps that were available to him to inaugurate a
proxy battle and with each passing day the likelihood of a
battle waned.  With a more developed record, Rabbani may be able
to succeed at trial in showing a violation of Rule 14a-3, but as
the record now stands he has not shown an improper solicitation
or that he is likely to succeed on the merits of this claim.

B. State law claims

Rabbani brings four state law claims.  He asserts that the
individual defendants breached their fiduciary duties to him and
violated § 717(a) of the New York Business Corporation Law
("BCL").  He alleges that Enzo breached its Bylaws and their
implied covenant of good faith and fair dealing.  Since it is

the company that will hold the Shareholder Meeting, only
Rabbani's claims against the company will be addressed.

       i.   Breach of Contract

     Rabbani alleges that Enzo is liable for breach of contract
by refusing to acknowledge the Nomination Letter, in violation
of Article II, § 15 of Enzo's Bylaws.[10]  Under New York law, the
elements of a breach of contract claim are formation of a
contract between the parties, performance by the plaintiff,
breach of the contract by the defendant, and damages.[11]  Eternity
Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375
F.3d 168, 177 (2d Cir. 2004).  The bylaws of a corporation act
as a contract between shareholders and the corporation.
Management Technologies, Inc. v. Morris, 961 F.Supp. 640,
646 (S.D.N.Y. 1997).

---

[10] In addition to the breach of contract claim asserted in the
Complaint, Rabbani's motion for a preliminary injunction refers
to a breach of contract claim premised on the Committee's
failure to report to the board on their setting of the
shareholder meeting.  Even if it were appropriate to consider
that unpleaded claim, Rabbani has not shown a likelihood of
success on the claim at trial.

[11] The parties agree that New York law applies to the common law
claims.  That agreement is sufficient to obviate the need for a
choice of law analysis.  British Intern. Ins. Co. Ltd. v.
Seguros La Republica, S.A., 342 F.3d 78, 81 (2d Cir. 2003).

Rabbani has not shown a likelihood of proving at trial that Enzo breached a contract with him by violating its Bylaws.[12]  The Bylaws expressly permit Enzo to "refuse to acknowledge the nomination of any person not made in compliance with" the Bylaws.  As described above, Rabbani has not shown a likelihood of proving at trial that the Nomination Letter complied that requirement.

> ii.  Good Faith and Fair Dealing

Rabbani alleges that Enzo violated the implied duty of good faith and fair dealing by "(i) refusing to acknowledge Rabbani's slate of directors, (ii) initially refusing to identify any specific deficiencies in the Nomination Letter, (iii) subsequently identifying only false, baseless, inadequate and/or pretextual 'reasons' for refusing to acknowledge Rabbani's slate of directors, and (iv) accelerating the date of the shareholders' meeting."  "Under New York law, a duty of good faith and fair dealing is implied in every contract.  The duty comprises any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the contract."  National Market Share, Inc. v.

---

[12] It is not clear that Rabbani has standing to raise this breach of contract claim since he has not brought a derivative action. Jones v. Niagara Frontier Transp. Author. (NFTA), 836 F.2d 731, 736 (2d Cir.1987) ("A shareholder -- even the sole shareholder - - does not have standing to assert claims alleging wrongs to the corporation.")  The discussion of his common law claims assumes without deciding that he has such standing.

Sterling Nat. Bank, 392 F.3d 520, 525 (2d Cir. 2004) (citation omitted).  New York law, however, "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002).

As already explained, Rabbani has not shown that any claim that hinges on the rejection of the Nomination Letter has merit.  Similarly, Rabbani has not shown a likelihood of proving at trial that Enzo breached the implied covenant of good faith and fair dealing by scheduling the shareholder meeting for January 29.

Enzo's annual shareholder meetings were required by its Bylaws to be held in January and that had been the company's consistent practice.  Enzo's October SEC filing predicted a January meeting date, and Rabbani relied on that understanding in choosing the date for the submission of his Nomination Letter; he submitted the Letter roughly sixty days before the anticipated meeting date, as required by the Bylaws.  While February 9 was in contention as a date for the Shareholder Meeting for two days (between November 23 and November 25), there was never any board action with respect to that date.  Indeed, there was never any official action with respect to any

date except January 29, which was approved by the Committee on
December 18.

    As a corollary to this analysis, no "reasonable person" in
Rabbani's position would have been justified in relying on the
proposed date of February 9.  National Market Share, Inc., 392
F.3d at 525.  Nor is there reasonable support for any
expectation that the meeting would be pushed to any date past
January.  In the past twenty years, Enzo had not held an annual
meeting other than in January and none of the other dates Enzo
suggested to its board for the meeting (January 26 and January
19) was in February.  While Rabbani's counsel apparently learned
in "mid-December" that Enzo was preparing for a meeting date of
February 23, by December 23 Enzo gave official notice that the
meeting would be held on January 29.  Thus, Rabbani only had
some basis for approximately one week to believe that the
meeting would be held on February 23.  In sum, Rabbani has not
shown a likelihood of prevailing on this second common law
claim.

2. Irreparable Harm

    Even if Rabbani were able to show a likelihood of success
on the merits, he would be required to establish as well that he
will suffer irreparable harm if the annual meeting date is not
adjourned.  "It is well-established that a transaction --
particularly a change-of-control transaction -- that is

influenced by noncompliance with the disclosure provisions of the various federal securities laws <u>can</u> constitute irreparable harm." <u>MONY Group, Inc.</u>, 368 F.3d at 147.

Rabbani has not succeeded in showing that he will suffer irreparable harm principally because he has not shown a sufficiently serious effort to run a competing slate of candidates for the Enzo board of directors.  He is not entitled to have the annual meeting adjourned so that he can have a second chance to mount a meaningful proxy fight.  By January 18, Rabbani's slate of candidates had dwindled from three to one and Rabbani's late-filed Proxy Statement was apparently never approved by the SEC.  Simply stated, Rabbani has failed to demonstrate sufficient diligence to warrant the extraordinary relief that he seeks.

The parties disagree as to what measures Rabbani could have taken to launch a public proxy fight.  Rabbani asserts that he could not have filed a preliminary proxy without knowing the date of the shareholder meeting.[13]  Enzo asserts that Rabbani had several options under Rule 14a-12 to demonstrate his seriousness

---

[13]  The defendants have shown that it is not uncommon for dissidents to file their competing proxy materials as soon as possible, even before the company has scheduled an annual meeting, to force the company to file preliminary, rather than definitive proxy materials.  Such filings, which are themselves preliminary proxy statements, typically leave a blank for the date and place of the shareholder meeting that is yet to be scheduled.

and publicize his bid and that he availed himself of none of them.

It appears that Rabbani did indeed have several options open to him to demonstrate an intent to wage a proxy battle. First, he could have submitted a Nomination Letter to Enzo that complied with Enzo's Bylaws and promptly filed a preliminary proxy statement with the SEC that complied with the SEC disclosure rules.  By submitting a defective Nomination Letter and delaying his submission of the Rabbani Proxy Statement to the SEC until virtually the eve of the annual meeting, he guaranteed that he would be unable to engage in a proxy battle for the January 29 meeting.  Nor can he properly excuse his delay in filing the Rabbani Proxy Statement by indicating that he wanted to have Enzo's bill of particulars of the deficiencies in his Nomination Letter.  Enzo had no duty to provide him advice and counsel on how to wage a proxy battle with the company.  Similarly, he cannot excuse his delay in filing by pointing to the fact that he did not learn that the company had settled on January 29 as the meeting date until December 23.  As described above, Rabbani was on sufficient notice of the likelihood that the meeting would be scheduled for January to prepare his submission on a timely basis.  As it was, he did not file the Rabbani Proxy Statement with the SEC until January 8, two weeks after learning of the date for the meeting.

With a filing of a preliminary proxy statement, Rabbani could even have begun solicitation without incurring the expense of immediately sending proxy materials to shareholders.  Rule 14a-2 describes solicitations made through a newspaper advertisement as solicitations to which Rule 14a-3 does not apply.  It states that Rule 14a-3 does <u>not</u> apply to

> Any solicitation through the medium of a <u>newspaper advertisement</u> which informs security holders of a course from which they may obtain copies of a proxy statement, form of proxy and any other soliciting material and does no more than:
> (i)   Name the registrant;
> (ii)  State the reason for the advertisement; and
> (iii) Identify the proposal or proposals to be acted upon by security holders.

17 C.F.R. § 240.14a-2(a)(6)(emphasis added).  Similarly, Rule 14a-3(f) provides:

> The provisions of paragraph (a) of this section <u>shall not apply to a communication made by means of speeches in public forums, press releases, published or broadcast opinions, statements, or advertisements</u> appearing in a broadcast media, newspaper, magazine or other bona fide publication disseminated on a regular basis, <u>provided that</u>:
> (1) No form of proxy, consent or authorization or means to execute the same is provided to a security holder in connection with the communication; and
> (2) At the time the communication is made, <u>a definitive proxy statement is on file</u> with the Commission pursuant to § 240.14a-6(b).

17 C.F.R. § 14a-3(f).

Moreover, Rabbani could even have begun his proxy battle in advance of filing a proxy statement with the SEC.  While Rule 14a-3(a)(1) prohibits solicitation unless each person solicited has been furnished with either a preliminary or a definitive proxy "containing the information specified in Schedule 14A," 17 C.F.R. § 14a-3(a)(1), there are exceptions to that rule.

Rule 14a-12 is called "Solicitation before furnishing a proxy statement" and is part of the "new regime" that started in 1999 to "liberaliz[e] communications that can be made . . . without being accompanied with or preceded by delivery of a proxy statement."  1 Sec. Law Handbook § 17-8 (2009).  "Rule 14a-12 permits a person to commence what would otherwise be deemed a solicitation prior to delivery of a proxy statement provided the conditions of the rule are complied with."  Id. The rule says:

> (a)  Notwithstanding the provisions of § 240.14a-3(a), a solicitation may be made before furnishing security holders with a proxy statement meeting the requirements of § 240.14a-3(a) if:
> (1)  Each written communication includes: [the identity of the participants and their interests, a "prominent legend" "advising security holders to read the proxy statement when it is available"]
> (2)  A definitive proxy statement meeting the requirements of § 240.14a-3(a) is sent or given to security holders solicited in reliance on this section before or at the same time as the forms of proxy . . . are furnished to or requested from security holders.

17 C.F.R. § 240.14a-12(a) (emphasis supplied).  Part (b)
requires the solicitor to file with the SEC the information that
it publishes, sends, or gives to security holders and to include
"a cover page in the form set forth in Schedule 14A." Id. at
14a-12(b).  Thus, under this new regime,

> insurgents . . . can commence their
> solicitation without having filed the proxy
> statement, provided no form of proxy is
> furnished to security holders; the identity
> and interests of the participants are
> disclosed . . . ; and a written proxy
> statement meeting the requirements of
> Regulation 14A is furnished to security
> holders solicited pursuant to Rule 14a-12 at
> the earliest practicable date . . . .

1 Sec. Law Handbook § 17:8.  Finally, Rule 14a-3's prohibitions
on solicitation without delivery of a proxy statement do not
apply to "Any solicitation made otherwise than on behalf of the
registrant where the total number of persons solicited is not
more than ten." Id. § 240.14a-2(b)(2).  Rabbani did not pursue
any of these options to initiate his proxy battle.

        In sum, Rabbani had several options in conducting a timely
proxy battle that would have given him the ability to contest
the Enzo slate of candidates without jeopardizing the annual
meeting date.  He took none of them.  And, within a few weeks
time, his slate of candidates imploded.  Whether this failure to
show a serious commitment to the proxy battle is analyzed as a
failure to demonstrate irreparable harm or a delay that deprives

35

him of the right to seek injunctive relief, see Merrill Lynch
Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 132 (2d Cir.
2003), it is fatal to his motion for a preliminary injunction.
Simply put, a threat to engage in a proxy contest is not a proxy
contest.

Rabbani counters that he simply did not understand until
the Proxy Statement was filed that there was "any urgency."
This argument is unpersuasive.  Rabbani's decision to serve the
Nomination Letter on November 20 is compelling evidence that he
well understood that the risk that the annual meeting would be
held, as it always had been, in January, and that if he wanted
to run a proxy contest time was of the essence.  While he has
shown that Enzo waited until the last possible moment to reveal
to him the actual date of the meeting, that tactical decision
does not excuse his delay in acting to protect his interests.
Rabbani may have hoped that Enzo would not hold an annual
meeting and would defer a vote of directors to a special meeting
held after January, but he had no reliable indication that that
would occur and plenty of evidence to the contrary.  Rabbani
took a gamble and lost.

For the reasons recited above, Rabbani has also failed to
carry his burden of showing that the balance of equities favors
him.  Enzo's expense in preparing for its annual meeting would
be lost, and it would have to prepare for a special meeting to

conduct its business if this motion were granted.    Because

Rabbani has not shown that he acted with sufficient diligence to

wage a proxy battle, he has not shown that he is entitled to

impose this financial and administrative burden on Enzo.

CONCLUSION

Plaintiff's January 11, 2010 motion for a preliminary

injunction is denied.


SO ORDERED:

Dated:    New York, New York
          February 1, 2010

                              _____
                                   DENISE COTE
                              United States District Judge

37